OPINION
Defendant-appellant James Mattice appeals from a judgment which awarded his former wife, plaintiff-appellee Deanna Mattice, now Lewis, $76,842.16 for her share of Mattice's retirement benefits. Lewis essentially argues that the trial court erred by using his three highest years of pay prior to his retirement in July 1997, rather than his three highest years of pay prior to the dissolution of the marriage in January 1982, in calculating Lewis' share of his retirement benefits. Mattice also argues that the trial court abused its discretion by ordering him to pay Lewis 10% interest on her portion of the retirement benefits from July 1997, until April 1, 2000.
We conclude that the trial court did not err by using Mattice's three highest years of pay prior to his retirement, rather than prior to the dissolution of the marriage, in calculating Lewis' share of the retirement, because, in our previous decision in this matter[1], we upheld the trial court's order, which calculated Lewis' portion of Mattice's pension in that manner, and that decision became the "law of the case," which the trial court was bound to follow. We also conclude that the trial court did not abuse its discretion in awarding Lewis 10% interest on her portion of the retirement benefits from 1997, until April 1, 2000, because Lewis was reasonably diligent in attempting to secure her portion of the retirement benefits, and the award fairly compensated Lewis for her loss of the use of her money during the period that Mattice withheld it from her.
Accordingly, the judgment of the trial court is Affirmed.
 I
James Mattice and Deanne Lewis were married in 1957. In December 1981, the parties entered into a separation agreement which was incorporated into a dissolution decree issued in January 1982. The decree provided in relevant part:
 21. Upon retirement of the Husband from Federal Civil Service, the Wife shall realize a portion of the Husband's Federal Civil Service retirement benefits, based upon the parties' twenty-three years of marriage. The Wife shall receive said portion of his retirement benefits which shall be determined as follows: One-half (1/2) of the ratio of said 23 years divided by the total number of years of Federal Civil Service of the Husband.
The decree further provided that it was a complete settlement of all rights and claims relating to the marriage.
In July 1997, Mr. Mattice retired from the federal civil service. Shortly before his retirement, Mattice prepared a Qualified Domestic Relations Order (QDRO) for Lewis to sign. In the QDRO, Mattice calculated Lewis' share by applying the ratio stated in the decree — one-half of twenty-three years divided by his forty years of service — to an annuity based on the average pay received in his three highest years of pay prior to the dissolution. Mattice's purpose in doing so was to prevent Lewis from benefitting from any pay increases he received after 1982. The QDRO also provided no survivorship benefits to Lewis. Lewis refused to agree to Mattice's proposed QDRO.
In September, 1997, Lewis filed a motion seeking an order compelling Mattice to file a QDRO in accordance with the terms of the dissolution decree. The matter was referred to a magistrate, who, after holding a hearing on the matter, issued a decision and order denying any survivor benefits to Lewis, but ordering Mattice to prepare a QDRO awarding Lewis a ratio of Mattice's annuity based on his three highest years of pay before retirement, not restricting the calculation to years before the marriage ended. The magistrate also ordered Mattice to pay Lewis 10% interest until she received the amount due her. Mattice filed objections to the magistrate's decision. The trial court overruled Mattice's objections, and adopted the magistrate's decision and order. Mattice appealed; this court affirmed. No appeal was taken from our judgment.
In March 1999, Mattice filed a Stipulated QDRO, which complied with the trial court's March 1998 order, and sent a copy to the federal Office of Personnel Management (OPM).
In October 1999, Lewis filed a motion seeking an order holding Mattice in contempt for failing to comply with the trial court's March 1998 order, and an accounting of Mattice's retirement benefits. In November 1999, Mattice again filed the Stipulated QDRO, and sent a copy to OPM. In January 2000, Matttice filed a motion seeking to have Lewis held in contempt for failing to make a claim to OPM for her portion of the retirement benefits, and to have Lewis held responsible for all the costs and expenses incurred by him in the course of legal proceedings since March 1999.
A hearing was held on the motions on February 29, 2000, and March 29, 2000. At the beginning of the February 29th hearing, Lewis withdrew her motion upon discovering that Mattice had, in fact, complied with the trial court's March 1998 order. In April 2000, the magistrate issued a decision and order rejecting Mattice's request to have Lewis held in contempt for her failure to request her share of the retirement benefits from OPM, because the dissolution decree did not place the burden on Lewis to apply to the OPM for her share of the retirement benefits. The magistrate also denied Mattice's request for attorney fees, because Lewis had "at all times acted in good faith and with reasonable diligence in pursuing her claim for her marital share of the retirement." The magistrate ordered Mattice to pay Lewis $76,842.16 for her share of the retirement benefits, which Mattice was currently holding, and further ordered Mattice to pay Lewis interest at the rate of 10% until Lewis was paid in full.
Mattice filed objections to the magistrate's decision and order. The trial court overruled Mattice's objections and adopted the magistrate's decision and order as its judgment.
Mattice appeals from the judgment of the trial court.
 II
Mattice's First Assignment of Error on appeal states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION WHEN IT AWARDED THE PLAINTIFF-APPELLEE A HIGHER PERCENTAGE OF DEFENDANT-APPELLANT'S RETIREMENT BENEFIT.
Mattice argues that the trial court erred by using his three highest years of pay prior to his retirement, instead of his three highest years of pay prior to the dissolution, in calculating Lewis' portion of the parties' retirement benefits. We disagree.
This argument is the same as the one Mattice raised in his first and third assignments of error in his prior appeal, which we overruled. Pursuant to the "law of the case" doctrine, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."[2] The doctrine is a rule of practice, rather than substantive law; therefore, it will not be applied where it would be unjust to do so.
Here, Mattice has not provided us with any compelling reason not to apply the doctrine in this case. Indeed, Mattice's argument boils down to the one he made to this court in his prior appeal, which we rejected — that the parties' dissolution decree should be interpreted so that the average of his three highest years of pay obtained during his marriage to Lewis is used in calculating Lewis' share of the retirement benefits, rather than his three highest years of pay prior to his retiring. We reject that argument now for the same reasons we rejected it before.
Accordingly, Mattice's First Assignment of Error is overruled.
 II
Mattice's Second Assignment of Error states:
 THE TRIAL COURT ERRED AS [A] MATTER OF LAW AND ABUSED ITS DISCRETION WHEN IT IMPROPERLY PENALIZED THE DEFENDANT-APPELLANT WHEN THE APPELLANT ACTED IN GOOD FAITH AND PLAINTIFF-APPELLEE FAILED TO MAKE APPLICATION FOR DIRECT BENEFIT PAYMENT FROM THE OFFICE OF PERSONNEL MANAGEMENT.
Mattice contends that the trial court abused its discretion by ordering him to pay 10% interest on Lewis' portion of the retirement benefits from the time of his 1997 retirement to April 1, 2000, when Lewis began receiving monthly payments from OPM, which represented her share of the parties' retirement benefits. We disagree.
An award of interest on a marital property division is a matter committed to the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion.[3]
Mattice raised the same argument that he is raising now in his second assignment of error in his first appeal, which we rejected. Mattice has not presented any compelling reason for not applying the law of the case doctrine in this instance, and we can think of none, particularly since the delay resulted from Mattice's challenge over the proper interpretation of the dissolution decree. Therefore, the trial court properly awarded 10% interest on the amounts owed to Lewis from Mattice's retirement in 1997, to December 18, 1998, the date our decision in Mattice's first appeal was rendered.
Likewise, the trial court properly awarded 10% interest on any payment owed to Lewis from December 18, 1998, to March 2, 1999, the date upon which Mattice finally complied with the trial court's order to submit a QDRO containing the language requiring that Mattice's three highest years of pay prior to his retirement be used in calculating Lewis' share of the pension benefits. A trial court does not abuse its discretion by ordering a party to pay interest on an amount the party owes, for the period the amount is past due.
We also conclude that the trial court did not abuse its discretion by awarding Lewis 10% interest from March 2, 1999, to April 1, 2000. Mattice's contrary assertion notwithstanding, the record supports the trial court's determination that Lewis acted in good faith and with reasonable diligence in attempting to secure her share of the retirement benefits. In March 1999, she signed the stipulated QDRO. In July 1999, she inquired about the status of her benefits. In November 1999, the trial court sent the QDRO to OPM. In December 1999, OPM sent Lewis a letter informing her that she needed to send it an application in order to receive the benefits. Mattice points out that he sent Lewis an application in 1997, along with instructions how to apply for benefits, but given Mattice's challenge regarding the proper interpretation of the parties' dissolution decree, we agree with the trial court that Lewis acted reasonably in deciding not to apply for benefits until Mattice's challenge was resolved. Additionally, the purpose in awarding interest in this type of situation is not to penalize Mattice, as he argues, but, instead, to compensate Lewis for her loss of the use of her money while the money was in Mattice's possession.
Mattice's Second Assignment of Error is overruled.
 IV
Both of Mattice's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 __________ FAIN, J.
WOLFF, P.J., and BROGAN, J., concur.
[1] Mattice v. Mattice (Dec. 18, 1998), Montgomery App. No. 17157, unreported.
[2] Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3.
[3] Mattice v. Mattice, supra, citing Koegel v. Koegel (1982),69 Ohio St.2d 355.