OPINION
Appellant, George King, and appellee, Diane King, were married on October 15, 1987. Two children were born as issue of said marriage, Ryan born September 12, 1988 and Cory born March 28, 1990. The parties also have a daughter, Shanna born April 23, 1982. Shanna is the natural born daughter of appellee and was adopted by appellant. On July 6, 1999, appellee filed a complaint for divorce.
A hearing before a magistrate was held on January 12, 2000. By decision filed February 8, 2000, the magistrate divided the parties' property, established spousal support and allocated the parental rights and responsibilities. Appellant filed objections and a hearing was held on April 27, 2000. By judgment entry filed June 5, 2000, the trial court overruled the objections. A final judgment entry was filed on July 26, 2000.
Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I THE TRIAL COURT ABUSED ITS DISCRETION IN DIVIDING THE PARTIES' MARITAL ASSETS AND DEBTS.
 II THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY TO APPELLEE SPOUSAL SUPPORT IN THE AMOUNT OF $75.00 PER MONTH FOR 72 MONTHS.
 III THE TRIAL COURT ERRED IN FAILING TO AWARD APPELLANT HIS SEPARATE PROPERTY.
 IV THE TRIAL COURT ERRED IN PROHIBITING APPELLANT'S WITNESS, KEN DAVIS, FROM TESTIFYING AT TRIAL ABOUT HIS DISCUSSIONS WITH THE MINOR CHILDREN, RYAN KING AND CORY KING, AND ABOUT THE CHILDREN'S RELATIONSHIPS WITH THEIR MOTHER AND FATHER.
 V THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S REQUEST FOR AN IN CAMERA INTERVIEW WITH THE MINOR CHILDREN, RYAN KING AND CORY KING.
 VI THE TRIAL COURT ERRED IN THE ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES.
 I
Appellant claims the trial court erred in dividing the parties' marital assets and debts. We disagree.
Specifically, appellant claims the trial court erred in granting appellee the marital residence and in ordering appellee to pay appellant his premarital interest in said property in monthly installments without interest.
The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case. Cherry v.Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
R.C. 3105.171(C)(1) and (F) order the distribution of marital assets to be equitable with the presumption that each spouse contributed equally to the marriage:
 (C)(1)Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
The duration of the marriage;
The assets and liabilities of the spouses;
 The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
The liquidity of the property to be distributed;
 The economic desirability of retaining intact an asset or an interest in an asset;
 The tax consequences of the property division upon the respective awards to be made to each spouse;
 The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 Any other factor that the court expressly finds to be relevant and equitable.
Appellant argues the trial court erred in awarding appellee the marital home and in offsetting his interest in the marital portion of his retirement accounts against his interest in said property. Appellant argues the trial court should have permitted either party to buy out the other's interest or should have ordered the property sold.
There is no evidence in the record to establish that appellant requested the sale of the marital home. In fact, appellant testified to the following:
 And wasn't it your intention that this be the house that you and your wife and your children would live in correct?
Ugh huh.
 And wasn't it your intention that your children would be able to grow up in this house . . . that they would have stability of the home that they were being raised in?
Right.
T. at 145.
In light of the fact that the trial court designated appellee as the residential parent, we cannot find the trial court erred in awarding the marital home to appellee.
Appellant further argues the trial court erred in ordering appellee to pay appellant his premarital interest in the marital home ($17,000) in installments of $250.00 per month for sixty-eight months without interest. Appellant argues the trial court did not order that the amount be secured with a mortgage deed.
The trial court, in approving and adopting the magistrate's decision, found the following on this issue:
 The Defendant shall quit claim his interest in the marital home to the Plaintiff. The Plaintiff shall indemnify and hold the Defendant harmless on the mortgage, taxes, and insurance.
 The Plaintiff shall owe the Defendant $17,000.00 as and for his premarital down payment in the marital residence. Because there are insufficient funds for the Plaintiff to pay this monetary award, this amount shall be secured with a promissory note and mortgage.
 This promissory note and mortgage shall be interest free. If a default of over thirty days occurs, interest shall accrue at ten percent simple interest and there shall be an acceleration clause which states that upon default, all remaining balances are due and payable. Effective March 1, 2000, Plaintiff shall pay to the Defendant $250.00 per month for sixty-eight consecutive months for the $17,000.00.
The trial court clearly provided for the amount to be secure. The decision to award interest on a property division payment is left to the sound discretion of the trial court. Koegel v. Koegel (1982),69 Ohio St.2d 355. The trial court sub judice provided for interest and acceleration in the event of a default. The trial court weighed a number of competing factors including appellee's low income against the value of appellant's separate property, $17,000. The trial court specifically found the division of marital assets was an equitable division.
Upon review, we cannot find the trial court erred in ordering appellee to pay appellant his separate property in monthly installments.
Assignment of Error I is denied.
 II
Appellant claims the trial court erred in awarding spousal support in the amount of $75.00 per month for seventy-two months. We disagree.
In determining spousal support, courts in this state are guided byKunkle v. Kunkle (1990), 51 Ohio St.3d 64, paragraph one of the syllabus, and R.C. 3105.18(C)(1):
 Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony would provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
 § 3105.18 Award of spousal support; modification.
 (C)(1)In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3015.17.1] of the Revised Code;
The relative earning abilities of the parties;
 The ages and the physical, mental, and emotional conditions of the parties;
The retirement benefits of the parties;
The duration of the marriage;
 The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 The standard of living of the parties established during the marriage;
The relative extent of education of the parties;
 The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience, and employment is, in fact, sought;
 The tax consequences, for each party, of an award of spousal support;
 The lost income production capacity of either party that resulted from that party's marital responsibilities;
 Any other factor that the court expressly finds to be relevant and equitable.
The trial court, in approving and adopting the magistrate's decision, stated that it considered all the spousal support factors and ordered spousal support in the amount of $75.00 per month for seventy-two months. The trial court retained jurisdiction to modify the award.
The trial court found this was a twelve year marriage. Appellant is forty-four and in good health. He is a high school graduate and his gross income at the time of the hearing was $31,291.00. See, Finding of Fact No. 5. Appellee is thirty-nine and in good health. She is a high school graduate and her gross income at the time of the hearing was $22,000.00. Id. Appellant has various retirement accounts worth substantially more than appellant's account. See, Finding of Fact No. 9. The trial court had evidence before it of the parties' respective monthly living expenses. The trial court noted appellant would no longer be responsible for the mortgage or for feeding five people. See, Finding of Fact No. 10. The trial court took into consideration the parties' bank accounts and respective real and personal property.
Upon review, we cannot find the trial court abused its discretion in awarding appellee $75.00 per month for seventy-two months.
Assignment of Error II is denied.
 III
Appellant claims the trial court erred in not awarding to him as his separate property the MetLife Insurance Policy and the CVC 50 caliber muzzle loader gun. We agree in part.
Separate property is defined in R.C. 3105.171(A)(6)(a)(ii) as "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."
Although appellant testified that the MetLife policy was fully paid up prior to the marriage (T. at 38), Exhibit O states the policy's inception date was June 18, 1992, during the marriage. The trial court found this contradiction to be fatal and determined appellant's testimony was not credible on the issue:
 Notwithstanding the Defendant's testimony that the MetLife Insurance Policy had been in effect since he was first employed, Exhibit O establishes an inception date for this particular policy of June 18, 1992, during the dates of this marriage. Therefore this insurance policy is found to be a marital asset. * * *
Because the trier of fact is the ultimate judge of credibility, we cannot find it was error to accept the policy's inception date over appellant's testimony.
Appellant also argues the trial court erred in not awarding the CVC 50 caliber muzzle loader gun as his separate property. There is no direct testimony concerning this gun by appellant. However, Exhibit 20 indicates the gun as appellant's property therefore, the trial court erred in not so ordering its retention by appellant. The gun is ordered returned to appellant as his separate property.
Assignment of Error III is granted in part and denied in part.
 IV
Appellant claims the trial court erred in prohibiting his witness, Pastor Ken Davis, from testifying about the children's relationships with their parents once appellee asserted counselor/minister privilege on their behalf. We disagree.
Appellant argues appellee was permitted to have a medical professional, Sandy Lombardi, testify on the issue and therefore it was error to deny him his witness. Ms. Lombardi was never called as a witness at trial. Further, no proffer of proof regarding Pastor Davis's testimony was provided pursuant to Evid.R. 103.
Upon review, we find the trial court did not err in prohibiting the testimony of Pastor Davis.
Assignment of Error IV is denied.
 V, VI
Appellant claims the trial court erred in not holding an in camera
interview with the two boys and in determining the allocation of parental rights and responsibilities. We agree.
R.C. 3109.04(B)(1) discusses in camera interviews and states as follows:
 In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation. (Emphasis added.)
We view this section to be mandatory language if either party requests the interview and discretionary only if the trial court does it on its own initiative.
The magistrate denied the in camera interview because it was not a "written" motion. Civ.R. 7(B) requires all motions to be in writing "unless made during a hearing or a trial." The motion sub judice was made at the final hearing and therefore the requirement for a written motion was not necessary.
Upon review, we find the trial court erred in denying the in camera
interview. The issue of allocation of parental rights and responsibilities is reversed pending the in camera interview.
Assignments of Error V and VI are granted.
The judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is hereby affirmed in part and reversed in part.
Farmer, J., Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
CASE NOS. 2000CA00203 2000CA00268.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is affirmed in part, reversed in part and remanded to said court for further proceedings consistent with this opinion. Costs to be divided equally between the parties.